UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRYLENA LARKIN, as Next Friend of
JAZMIN WRAY,

    Plaintiff,

-vs-

EATON COUNTY; EATON COUNTY SHERIFF'S
DEPARTMENT; DEPUTY TIMOTHY DAUST;
CAPTAIN GREGORY CRAWFORD, SERGEANT
ELIZABETH ESQUIVEL; LANSING MALL;
ROUSE PROPERTIES; and UNIVERSAL
PROTECTION SERVICE, LLC,

    Defendants.

Case No. 1:16-cv-00464-GJQ-PJG
Hon. Gordon J. Quist

_____/

**Nadeau Law, PLLC**
SCOTT D. NADEAU (P64316)
Attorney for Plaintiff
26339 Woodward Avenue
Huntington Woods, MI 48070
(313) 279-1276

**Johnson, Rosati, Schultz & Joppich, P.C.**
JAMES L. DYER (P32544)
ANDREW BREGE (P71474)
Attorney for Defendants Eaton County, et al.
822 Centennial Way, Suite 270
Lansing, MI 48917
(517) 886-3800

**Thomas, DeGrood & Witenoff, P.C.**
GEORGE M. DeGROOD, III (P33724)
Attorney for Defendants Universal, Esquivel
   Rouse Properties and Lansing Mall
400 Galleria Officentre, Suite 550
Southfield, MI 48034
(248) 353-4450
_____/

**PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT BY
DEFENDANTS UNIVERSAL AND ESQUIVEL**

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2017, I filed a copy of the foregoing with the Clerk of Court using the electronic filing system that will send electronic notification of this filing to all parties.

                                      /s/ Scott D. Nadeau
                                      SCOTT D. NADEAU (P64316)

## CONTROLLING AUTHORITIES

*Tumbarella v. The Kroger Co.*, 85 Mich. App. 482; 271 N.W.2d 284 (1978)

*Whalen v. Bennett*, 67 Mich. App. 720; 242 N.W.2d 502 (1976)

*Brown v. Pointer*, 390 Mich. 346; 212 N.W.2d 201 (1973)

*Donovan v. Guy*, 347 Mich. 457; 80 N.W.2d 190 (1956)

*Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1; 672 N.W.2d 351 (2003)

*Burns v. Olde Discount Corp.*, 212 Mich. App. 576; 538 N.W.2d 686 (1995)

*Fed. R. Civ. P. 56*

*Local Rule 7.2*

## CONCISE STATEMENT OF ISSUES PRESENTED

ISSUE I:

THERE IS A QUESTION OF MATERIAL FACT AS TO WHETHER DEFENDANT ESQUIVEL AND DEFENDANT UNIVERSAL, AS ESQUIVEL'S EMPLOYER, FALSELY IMPRISONED PLAINTIFF WRAY

ISSUE II:

PLAINTIFF CONCEDES THIS ISSUE TO DEFENDANTS UNIVERSAL AND ESQUIVEL.

ISSUE III:

PLAINTIFF CONCEDES THIS ISSUE TO DEFENDANTS UNIVERSAL AND ESQUIVEL.

ISSUE IV:

PLAINTIFF CONCEDES THIS ISSUE TO DEFENDANTS UNIVERSAL AND ESQUIVEL.

## VERIFIED STATEMENT OF FACTS

On March 8, 2014, PLAINTIFF JAZIMN WRAY ("Wray"), a girl who was 14 years old at the time, was at the Lansing Mall with her friend Amaya Cummins. This may be the only fact that is not in dispute relative to DEFENDANTS UNIVERSAL ("Universal") and ESQUIVEL ("Esquivel"). According to Wray, the girls were approached by an Eaton County Sheriff deputy and told to leave the mall (**Exhibit 1,** Wray deposition, pp. 44-5). Wray told the deputy that she needed to get her coat out of a small room near the security station and restrooms where teenagers commonly left their jackets (**Ex. 1**, pp. 46-8). When she arrived at the room, she was told by a sheriff that both the girls were being banned from the mall and that she needed to sign a "ban notice" that was issued by the mall security. However, according to Wray, it was a female sheriff who told the girls that they needed to provide certain personal information and sign the ban notice (**Ex. 1**, p. 60). Ms. Cummins provided the information and was permitted to leave, but Wray was not allowed to leave until she signed the ban notice (**Ex. 1**, pp. 62-3; 64-5; 119). When Wray tried to leave the room, she was attacked by DEFENDANT EATON COUNTY SHERIFF DAUST ("Daust"). Eventually, the assault by the sheriff ended, Wray's mother was contacted, and Wray left the mall.

According to Esquivel, she recognized the girls from an incident earlier in the day as two girls that were escorted out of the mall by another Universal security officer (**Exhibit 2**, Esquivel deposition, pp. 27-9). Esquivel stated that the girls we being brought back to the community room to sign a ban notice and that she radioed the sheriffs for assistance because she believed the girls were not going to leave (**Ex. 2**, p. 38-9). Defendants Daust and Crawford entered the room with the two girls and Esquivel (**Ex. 2**, p. 38-9). After Ms. Cummins provided her information and signed the ban notice, Esquivel opened the door of the small "community room" so Ms. Cummins could leave (**Ex. 2**, p. 45). Wray was not permitted to leave, and Esquivel stood in the doorway preventing Wray

3

from leaving as she was "fighting" to get out (**Ex. 2**, p. 47). Despite Esquivel admitting to blocking the doorway, she stated that it was "not her job to detain [Wray]" (**Ex. 2**, p. 48-50). Nevertheless, Esquivel closed herself in the room with the sheriffs and Wray while the assault was occurring (**Ex. 2**, pp. 52-3).

Daust stated that he received a dispatch call over the Universal radio frequency to assist security (Esquivel) (**Exhibit 3**, deposition of Daust, pp. 19-20). At that time, Daust did not believe there was any reason to detain the girls, and when he and DEFENDANT EATON COUNTY SHERIFF CRAWFORD ("Crawford") arrived, Esquivel asked the girls to come to the back where the security office was located, which the girls (according to Daust) willingly did (**Ex. 3**, p. 22). Once back at the "community room," Esquivel entered the key code to allow access into the room (**Ex. 3**, p. 24). Then Esquivel began to ask the girls to provide information for the ban notice (**Ex. 3**, p. 25). Ms. Cummins did, but Wray refused. Daust felt that it would be best to let Ms. Cummins leave to "deescalate the situation" (**Ex. 3**, p. 26). Wray, however was not free to leave because she had not provided the information for the mall's ban notice (**Ex. 3**, p. 27). Daust stated that he, not Esquivel was at the door when Wray tried to leave the room (**Ex. 3**, p. 31). Daust believed that Wray tried to grab his gun and that's why he assaulted her (**Ex. 3**, pp. 30-1). In his report, Daust stated that Wray was already being detained for the purpose of completing the mall's ban notice before she allegedly touched his gun (**Exhibit 4**, Daust report). He also stated that Esquivel was in the community room the entire time and Ms. Cummins was fighting with a male Universal security guard at the door of the room (**Ex. 3**, p. 34).

Crawford's deposition is similar to Daust's but he stated that they met Esquivel in the hallway outside the "community room," not by the main entrance, which was quite far away (**Exhibit 5**, Crawford deposition, p. 13). He also stated that the girls were being detained by mall security, not the Eaton County Sheriffs (**Ex. 5**, p. 14), because "we [Daust and Crawford] had no

4

information or reason to detain them" (**Ex. 5**, p. 15). Daust and Crawford took over the primary responsibility of attempting to gather information from the girls for the mall's ban notice (**Ex. 5**, pp. 19-20). Esquivel remained in the room the entire time, according to Crawford (**Ex. 5**, p. 31).

## STANDARD OF REVIEW

Plaintiff adopts the standard of review set forth by Defendants Universal and Esquivel in their Motion for Summary Judgment.

## ARGUMENT I:

### THERE IS A QUESTION OF MATERIAL FACT AS TO WHETHER DEFENDANT ESQUIVEL AND DEFENDANT UNIVERSAL, AS ESQUIVEL'S EMPLOYER, FALSELY IMPRISONED PLAINTIFF WRAY

There are several facts testified to by the respective parties, and described briefly above, that are in conflict, and these conflicts create issues of material fact that must be considered by a jury. Further, in "cases involving questions of intent, credibility, or state of mind, summary judgment is hardly ever appropriate." *Tumbarella v. The Kroger Co.*, 85 Mich. App. 482, 492; 271 N.W.2d 284 (1978), citing *Whalen v. Bennett*, 67 Mich. App. 720, 725; 242 N.W.2d 502 (1976); *Brown v. Pointer*, 390 Mich. 346, 354; 212 N.W.2d 201 (1973). Defendants rely heavily upon the testimony of Wray, who was only 14 years old at the time of the incident, who never wrote down any report or notes about the incident, and who offered her deposition testimony about four years after the incident, when she was 18 years old. In other words, her memory of the details of who was where in the room do not have the benefit of a writing to rely upon when recounting the story. However, the testimony and reports of Esquivel and the Eaton County Sheriffs tell different stories, not only from Wray, but from each other. Since the reports were written immediately after the incident, they served as a foundation of the memories of the Defendants, and should be at least partially relied upon when considering the validity of this motion for summary judgment.

Defendants correctly state the applicable law for false imprisonment. The testimony and reports of Esquivel and the Eaton County Sheriffs make out a clear cut case for false imprisonment or, at the very least, create enough questions about the material facts, intent, credibility, and state of mind of the individual defendants so as to justify denying their motion.

It is important to note that the "ban notice" that was signed by Ms. Cummins and eventually Wray, was the mall's notice, not the Eaton County Sheriffs'. However, it is clear that Esquivel called in the sheriffs because she knew she had no authority to detain the girls (**Ex. 2**, 48-50). Esquivel, in other words, was using the authority the sheriffs had to detain Wray until Wray provided personal information and signed the notice.

The critical moments in this case happened in and around the "community room" where the assault occurred. While there are several conflicts in the parties' depositions, there is sufficient overlap to determine whether Wray was being falsely imprisoned. Most importantly is the moment when Ms. Cummins is allowed to leave the room, but Wray is not. Whether we believe Esquivel (who stated she was blocking the door, preventing Ms. Cummins from re-entering the room but – incredibly – did not see anything happening right in front of her and did not seem to understand that she was also blocking Wray from exiting, **Ex. 2**, pp. 48-52), Crawford (who stated that it was mall security, i.e., Esquivel, who was detaining Wray, not the Sheriffs, **Ex. 5**, p.14), or Daust (who stated that Wray was not free to leave until she provided the information for the form, **Ex. 3**, p. 27), it is clear that Wray – in the minds of Esquivel, Crawford, and Daust – was being detained. Since the ban notice was not required under the law, and it could be argued that a minor signing the ban notice would have no legal effect without parental consent, there was no basis to hold Wray. The fact that Ms. Cummins was permitted to leave once she signed the notice, but not Wray, shows the intent of Esquivel to detain Wray until the notice was signed. Esquivel essentially allowed the sheriffs to effectuate mall policy and is now trying to absolve herself of responsibility for her role in

6

making that happen. Without Esquivel, the sheriffs would not have been involved. Without the sheriffs, the ban notice may never have been signed.

Is there a question of material fact left for the trier of fact on the issue of false imprisonment by Esquivel and, by extension, Universal? Undoubtedly, yes. The sheriffs stated clearly that they were not detaining Wray up until the gun "grab," mall security was detaining her. However, they also stated that she was not free to leave. Esquivel stated that it was "not her job" to detain the girls, but she allowed Ms. Cummins to leave the room once she had signed the notice, but Wray was not free to leave. Eventually, Esquivel, closed the door behind her with herself, Wray, and the sheriffs in the room. The differences in the details between Daust, Crawford and Esquivel call into question the credibility, state of mind, and intent of all three actors. It is for these reasons that summary judgment should not be granted on this issue.

## ARGUMENT II:

PLAINTIFF CONCEDES THIS ISSUE TO DEFENDANTS ESQUIVEL AND UNIVERSAL

## ARGUMENT III:

PLAINTIFF CONCEDES THIS ISSUE TO DEFENDANTS ESQUIVEL AND UNIVERSAL

## ARGUMENT IV:

PLAINTIFF CONCEDES THIS ISSUE TO DEFENDANTS ESQUIVEL AND UNIVERSAL

## CONCLUSION

Plaintiff Wray requests that this honorable court deny the Motion for Summary Judgment by Defendants Esquivel and Universal on Issue I pursuant to Fed. R. Civ. P. 56. There are several statements by all deponents in this matter that present questions of material facts to be considered by the trier of fact with respect to false imprisonment/detainment. Plaintiff concedes that the facts as testified to by all deponents do not raise any issues of material fact on the remaining issues with respect to Defendants Esquivel and Universal.

Respectfully Submitted,

NADEAU LAW, PLLC

BY: /s/ Scott D. Nadeau
Attorney for Plaintiff Larkin/Wray
26339 Woodward Ave.
Huntington Woods, MI 48070
(313) 279-1276